IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF IOWA

BRANDSAFWAY, LLC, and ALL-AMERICAN )
SCAFFOLD, LLC,                        )
                                      )
            Plaintiffs,               )
                                      )
      v.                              ) Court No.
                                      )
TRAVELERS INSURANCE COMPANY,   d/b/a  )
PHOENIX INSURANCE COMPANY,            )
                                      )
            Defendant.                )

## COMPLAINT

Now come the Plaintiffs, BRANDSAFWAY, LLC and ALL-AMERICAN SCAFFOLD, LLC., by and through their undersigned attorney, and for their Complaint against Defendant, TRAVELERS INSURANCE COMPANY, pursuant to 28 U.S.C., Sec. 2201 and Rule 57 of the Federal Rules of Civil Procedure, allege as follows:

## THE PARTIES

1.     At all times relevant hereto, the Plaintiff, BRANDSAFWAY, LLC. (hereinafter "BRANDSAFWAY") was a scaffold rental company that leases equipment in the State of Iowa.

2.     At all times relevant hereto, the principal place of business for BRANDSAFWAY was Atlanta, Georgia.

3.     At all times relevant hereto, the Plaintiff, BRANDSAFWAY, was organized under the laws of the State of Delaware.

4.     At all times relevant hereto, the principal place of business for ALL-AMERICAN SCAFFOLD, LLC ("ALL-AMERICAN") was Kennesaw, Georgia.

1

5.      At all times relevant hereto, the Plaintiff, ALL-AMERICAN, was organized under the laws of the State of Iowa.

6.      At all times relevant hereto, the principal place of business of defendant TRAVELERS INSURANCE COMPANY, d/b/a PHOENIX INSURANCE COMPANY (herein "TRAVELERS"), upon information and belief, New York City, New York.  Phoenix Insurance Company has its principal place of business in Hartford, Connecticut.

7.      At all times relevant hereto, upon information and belief, TRAVELERS was organized under the laws of the State of Minnesota.  Phoenix Insurance Company, at all times relevant hereto, upon information and belief, was organized under the laws of the State of Connecticut.

8.      At all times relevant hereto, TRAVELERS was an insurance company licensed to issue policies of insurance in all 50 states and transacted business in the State of Iowa.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction pursuant to 28 U.S.C., Sec. 1332, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and the Plaintiffs and Defendant are from different states.

10.     Venue is proper in this district pursuant to 28 U.S.C., Sec. 1391(a), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

11.     Cramer and Associates, Inc. ("Cramer") entered into a contract with ALL-AMERICAN whereby ALL-AMERICAN was to provide scaffolding for a construction project on I-80 near Des Moines, Iowa. A copy of the contract is attached hereto as Exhibit A.

12.     On or about February 6, 2020, Benjamin Rivera-Avila was killed when he allegedly fell from scaffolding he had been erecting for his employer, Cramer.

13.     Benjamin Avila Rivera filed suit against ALL-AMERICAN, BRANDSAFWAY and Cramer, case number LACL152422, in the District Court of Polk County, Iowa (hereinafter the "Lawsuit"), alleging that the scaffolding provided by ALL-AMERICAN was defective.  A copy of the Lawsuit is attached hereto as Exhibit B.

14.     At all times relevant hereto, the contract between ALL-AMERICAN and Cramer provided as follows:

**Minimum Insurance Requirement.**

(a)     At all times while performing work hereunder, Customer shall maintain insurance in amounts not less than:

   (1)   Workers' Compensation: Statutory amount;
   (2)   Employer's Liability: minimum limit of $1,000,000 per accident;
   (3)   General Liability Insurance, including contractual liability, products, and completed operations: $1 million per occurrence and $2 million aggregate;
   (4)   Automobile Liability Insurance: combined single limit of $1 million per accident;
   (5)   Excess Liability Insurance combined single limit for Bodily Injury and Property Damage of not less than $4,000,000 per occurrence.

b)     All insurance policies required herein shall:

   (1)   Name Company, its directors, officers, employees, affiliates and agents as additional insureds to the greatest extent allowed by law except items (1) and (2) above on a broad form endorsement with coverage no less broad than ISO form CG 201O 1185. A current certificate of insurance must be supplied indicating the above coverage prior to the commencement of the work. Company shall have no duty to review said certificates and any failure of Company to notify Customer of its non-compliance with this section or any other provision contained in these requirements shall not act as a waiver of any right by Company.

   (2)   Contain and endorsement stipulating that Customer's policies are primary to and not contributory with any other policies affording coverage to Company and all other additional

3

insureds, including any self-insurance retention or deductible maintained by the company;

(3)   Provide that no policy shall be materially changed, amended or canceled except after 30 days prior written notice to Company;

(4)   To the maximum extent permitted by law, all insurance policies of Customer in any way related to, or providing any coverage in connection with the work, whether or not required by this Agreement, shall be endorsed to waive all rights of subrogation against Company, except workers' compensation and employer's liability coverage.

15.   Cramer purchased commercial general liability insurance from TRAVELERS (hereinafter the "Policy").

16.   By letter dated June 22, 2022, ALL-AMERICAN and BRANDSAFWAY tendered their defense in the Lawsuit to Cramer, with a request that Cramer forward the letter to its insurer.

17.   By letter dated July 15, 2022, ALL-AMERICAN and BRANDSAFWAY tendered their defense in the Lawsuit directly to TRAVELERS.

18.   Upon information and belief, under the terms of the Policy, the Lawsuit was potentially covered under the Policy.

19.   TRAVELERS never responded to ALL-AMERICAN's and BRANDSAFWAY's tender of their defense in the Lawsuit.

20.   ALL-AMERICAN and BRANDSAFWAY settled the Lawsuit for $155,000.  They also incurred $50,114.33 in attorney's fees and costs defending the Lawsuit.

## FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

21.   Plaintiffs, ALL-AMERICAN and BRANDSAFWAY incorporate and reallege their allegations set forth in Paragraphs 1-20 of this Complaint as if fully restated herein.

22.     TRAVELERS had a duty to defend and indemnify ALL-AMERICAN and BRANDSAFWAY for the Lawsuit under the Policy.   TRAVELERS refused to defend or indemnify ALL-AMERICAN and BRANDSAFWAY with respect to the Lawsuit and never responded to their tender of defense.

23.     ALL-AMERICAN and BRANDSAFWAY are entitled to a declaration that they are owed both a defense and indemnification by TRAVELERS with respect to the Lawsuit.

24.     There is at present a dispute as to whether TRAVELERS was obligated to defend or indemnify the Plaintiffs, ALL-AMERICAN and BRANDSAFWAY, with regard to the Lawsuit. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court.   Moreover, pursuant to 28 U.S.C., Secs. 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to give such further relief as may be necessary.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, ALL-AMERICAN and BRANDSAFWAY, demand judgment as follows:

(1)     A declaration by this Court that TRAVELERS had a duty to defend ALL-AMERICAN and BRANDSAFWAY in the Lawsuit under the Policy;

(2)     A declaration by this Court that TRAVELERS has a duty to indemnify ALL-AMERICAN and BRANDSAFWAY for any settlement paid by BrandSafway in the Lawsuit;

(5)     Such other relief, legal or equitable, as this Honorable Court may deem just and proper.

## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

25.     Plaintiffs, ALL-AMERICAN and BRANDSAFWAY incorporate and reallege their allegations set forth in Paragraphs 1-20 of this Complaint as if fully restated herein.

26.     TRAVELERS had a duty to defend and indemnify ALL-AMERICAN and BRANDSAFWAY for the Lawsuit under the Policy.  TRAVELERS refused to defend or indemnify ALL-AMERICAN and BRANDSAFWAY with respect to the Lawsuit and never responded to their tender of defense.

27.     TRAVELERS breached its contractual duties to ALL-AMERICAN and BRANDSAFWAY with respect to the Lawsuit under the Policy.

28.     ALL-AMERICAN and BRANDSAFWAY were damaged by TRAVELERS' breach by being forced to defend themselves, incurring $50,114.33 in attorney's fees and costs defending the Lawsuit and having to pay $155,000 to settle the Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, ALL-AMERICAN and BRANDSAFWAY, demand judgment in the amount of $205,114.33 plus pre- and post-judgment interest and such other relief, legal or equitable, as this Honorable Court may deem just and proper.

## THIRD CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

29.     Plaintiffs, ALL-AMERICAN and BRANDSAFWAY incorporate and reallege their allegations set forth in Paragraphs 1-20 of this Complaint as if fully restated herein.

30.     TRAVELERS' failure to respond to the tender of ALL-AMERICAN and BRANDSAFWAY and refusal to defend and indemnify them was unreasonable and unjustified and constitutes bad faith.

31.     ALL-AMERICAN and BRANDSAFWAY were damaged by TRAVELERS' bad faith actions or inactions by being forced to defend themselves, incurring $50,114.33 in attorney's fees and costs defending the Lawsuit and having to pay $155,000 to settle the Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, ALL-AMERICAN and BRANDSAFWAY, demand judgment in the amount of $205,114.33, pre- and post-judgment interest, their attorney's fees incurred in bringing this action and such other relief, legal or equitable, as this Honorable Court may deem just and proper.

February 23, 2023

Tribler Orpett & Meyer, P.C.

s/Michael J. Meyer
One of the Attorneys for Plaintiffs,
All-American Scaffold, LLC and BrandSafway,
LLC

Michael J. Meyer, ARDC #6193712
Tribler Orpett & Meyer, P.C.
225 W. Washington Blvd., Suite 2550
Chicago, IL 60606
(312) 201-6400
mjmeyer@tribler.com
service accepted at docket@tribler.com

# EXHIBIT A



## All-American Scaffold, LLC Standard Terms and Conditions - Sale/Rental

Any project-specific terms and conditions set forth in All-American Scaffold, LLC's (hereinafter the "Supplier") quote or other Supplier documentation related to this project or order shall control in the event of a conflict with these Standard Terms and Conditions.

**Definitions.**    As used herein, the following terms shall have the following meanings. *"Agreement"* shall mean these Standard Terms and Conditions and any project-specific or additional terms and conditions contained in a Supplier quote or other Supplier-provided documentation related to this project or order.    *"Customer"* shall mean the party designated as such in this Agreement and, if different, the entity that is actually responsible for ordering the Equipment. *"Equipment"* shall mean any and all equipment identified in this Agreement or provided to the Customer by Supplier, including, but not limited to, scaffolding, hoists and related items. *"Loss"* shall mean the loss, destruction, theft of, or damage to, any Equipment, excepting normal wear and tear. *"Parties"* shall mean Supplier and the Customer together. *"Party"* shall mean Supplier or Customer individually, as the context requires.    *"Rental Period"* shall mean the period of time commencing when the Equipment is picked up by Customer at a Supplier facility or leaves a Supplier facility to be transported to Customer and ending when the Equipment is received at the Supplier facility designated by the Supplier to receive the Equipment from the Customer. *"Supplier"* shall mean Supplier, LLC, and its parents, subsidiaries, affliates, successors, and assigns.

**Acceptance and Modification.**    SUPPLIER'S AGREEMENT TO PROVIDE EQUIPMENT HEREUNDER IS EXPRESSLY CONDITIONED UPON CUSTOMER'S UNQUALIFIED ACCEPTANCE OF THIS AGREEMENT, AND CUSTOMER'S ACCEPTANCE OF THIS AGREEMENT IS EXPRESSLY LIMITED TO THE EXACT TERMS AND CONDITIONS SPECIFIED HEREIN. The rights of the parties shall be governed exclusively by the terms and conditions set forth in this agreement. Shipment or delivery of Equipment pursuant to this Agreement or the acceptance, use or retention of any Equipment by Customer shall constitute an unqualified acceptance by Customer of this Agreement. Any attempt by Customer to vary in any degree, the exact terms and conditions of this Agreement in any acceptance, acknowledgement, confirmation or other communication of any kind containing additional, inconsistent, or different terms and conditions is hereby expressly objected to and rejected. Supplier's provision of Equipment pursuant to the terms of this Agreement shall not be deemed to be an acceptance of any additional, inconsistent, or different terms proposed by Customer. Should this Agreement be deemed an acceptance of a prior offer, quotation or proposal by Customer, such acceptance is limited to the express terms and conditions set forth herein. This Agreement cannot be amended or modified (including prior course of dealing or trade usage) unless in writing and signed by both Customer and Supplier.

**Warranty Disclaimer; Limitation of Liability.**    SUPPLIER MAKES NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE OF MERCHANTABILITY OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE.  IN ADDITION, AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, (i) SUPPLIER WILL NOT BE RESPONSIBLE FOR ANY EQUIPMENT FAILURE OR LIABILITY WHATSOEVER, UNLESS SUCH FAILURE OR LIABILITY IS THE RESULT OF SUPPLIER'S NEGLIGENCE, AND (ii) SUPPLIER WILL HAVE NO LIABILITY WHATSOEVER FOR ANY INCIDENTAL, CONSEQUENTIAL, PUNITIVE, LIQUIDATED, DELAY OR OTHER DAMAGES, INCLUDING WITHOUT LIMITATION, LOST PROFITS, LOSS OF PRODUCTION, LOSS OF USE, OR ANY OTHER INDIRECT DAMAGE OR LOSS ARISING FROM OR RELATING HERETO.

**Indemnification.**    TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER SHALL INDEMNIFY, DEFEND AND HOLD SUPPLIER, ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, SUITS, CAUSES OF ACTION, PROCEEDINGS, AND/OR JUDGMENTS, AS WELL AS DAMAGES, LOSSES, LIABILITIES, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COSTS), OF WHATEVER NATURE RESULTING FROM, ARISING OUT OF, OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, CLAIMS RELATING TO (I) PERSONAL INJURY (INCLUDING DEATH) OR DAMAGE TO PROPERTY, OR (II) THE DELIVERY, ERECTION, MAINTENANCE, ALTERATION, MODIFICATION, USE, POSSESSION, OPERATION, DISMANTLING, OR ENGINEERING OF THE EQUIPMENT OR EQUIPMENT ENCLOSURES. IT IS THE INTENT OF THE PARTIES THAT THE CUSTOMER INDEMNIFY SUPPLIER TO THE MAXIMUM EXTENT ALLOWED UNDER THE LAW AND THAT THE CUSTOMER BEAR FULL RESPONSIBLITY FOR ANY CLAIM, DAMAGE, CAUSE OF ACTION, JUDGMENT, EXPENSE, COST OR OTHER LIABILITY ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE EQUIPMENT. THIS INDEMNITY OBLIGATION SHALL NOT APPLY TO ANY CLAIMS, DAMAGES, CAUSES OF ACTION, JUDGMENTS, OR OTHER LIABILITY CAUSED SOLELY BY THE NEGLIGENCE OF SUPPLIER.

**Claims.**    All claims for losses, damages, backcharges or offsets by Customer shall be submitted to Supplier in writing within fifteen (15) days of the first discovery of a potential claim.  Claims not made in accordance with this paragraph are waived.

**Important Safety Guidelines.**    CUSTOMER IS HEREBY MADE AWARE OF THE SUPPLIER  IMPORTANT SAFETY GUIDELINES , A COPY OF WHICH IS ATTACHED HERETO.  CUSTOMER MAY ALSO OBTAIN A COPY OF SUCH IMPORTANT SAFETY GUIDELINES BY CONTACTING A SUPPLIER REPRESENTATIVE OR VISITING SUPPLIER'S WEBSITE AT www.BrandSafway.com.

**Equipment Loss or Damage.**    Customer shall be responsible for any Loss during the Rental Period.  Regardless of whether or to what extent the Customer is responsible for the Loss, Customer shall promptly pay to Supplier a sum equal to Supplier's current list price plus handling charges for any and all Equipment that is subject to the Loss, unless the Loss is attributable solely to the negligence of Supplier.  For health and safety reasons, damaged Equipment must be returned to Supplier by Customer, and Supplier shall not be obligated to return any such Equipment to Customer, regardless of any replacement costs incurred or paid by Customer pursuant to this Section.

**Contaminated Equipment.**    Customer shall fully clean and decontaminate, in a manner satisfactory to Supplier, any and all Equipment exposed to asbestos, materials containing lead, radiation, toxic or hazardous substances, or any other materials that may reasonably represent a hazard to human health or would preclude or limit future use of the Equipment by Supplier.  Upon Supplier's request, Customer shall provide to Supplier any and all documentation reasonably required to confirm such cleaning and decontamination has occurred.  Should any Equipment be returned to Supplier without being cleaned or decontaminated, the Customer shall, at Supplier's sole option, either (1) clean and decontaminate the Equipment at Customer's sole cost (including any and all transportation costs associated therewith), or (2) reimburse Supplier for any and all reasonable costs incurred by Supplier in connection with cleaning or decontaminating the Equipment or engaging a third party to clean and decontaminate the Equipment.  Should any Equipment be unable to be cleaned or decontaminated to Supplier's satisfaction, Customer shall pay to Supplier an amount equal to Supplier's current list price plus any handling charges for any and all such Equipment.  In addition, Customer shall indemnify Supplier from and against any and all damages resulting from or relating to Customer's failure to properly and adequately decontaminate the Equipment. For health and safety reasons, contaminated Equipment must be returned to Supplier by Customer, and Supplier shall not be obligated to return any such Equipment to Customer regardless of any cleaning, decontamination, or replacement costs incurred or paid by Customer pursuant to this Section.

**Credit and Payment.**    If requested by Supplier, Customer shall complete and return a credit application.  Supplier's obligation to provide Equipment is expressly conditioned upon the approval of Customer's credit by Supplier.  Payment terms shall be net thirty (30) days from the date of Supplier's invoice to the Customer, unless otherwise agreed upon by the Parties.  A monthly service charge of the lesser of one and one-half percent



**ALL-AMERICAN SCAFFOLD**
BY BRAND SAFWAY

## All-American Scaffold, LLC Standard Terms and Conditions - Sale/Rental

(1.5%) or the maximum amount allowed by law shall be assessed on all past due accounts.  Supplier may issue progress billings during the term of the project. Nothing set forth in this Agreement shall limit Supplier's rights under any bond or lien law.  Supplier may recover and Customer shall be responsible for all costs of collection, including filing and service costs, expert and mediation fees, court and litigation out of pocket expenses and attorneys' fees related to Customer's failure to pay within terms.  Any price or quotation as set out in or attached to this Agreement is valid for ninety (90) days from the date of this agreement.

**Technical Information.**  Where Supplier has provided to Customer technical data, drawings, information or specifications for use of Supplier materials or equipment, the following conditions shall apply:
    **a. CUSTOMER AGREES TO DEFEND, INDEMNIFY AND HOLD SUPPLIER HARMLESS AGAINST AND FROM LIABILITY OR CLAIM FOR DAMAGE OR INJURY SUSTAINED BY REASON OF DEVIATION IN WHOLE OR PART FROM SUCH TECHNICAL INFORMATION.**
    b. All technical information shall remain the property of Supplier and may not be used on any other project of any kind and nature without the express written consent of Supplier.
    c. Assembly drawings will be charged out at $50.00 per hour.
    d. All notes, note sheets, specifications, and other information provided with Supplier's drawings shall become part of this Contract.

**Use and Maintenance of Equipment.**  Customer expressly agrees that it shall erect, dismantle, modify, and/or use the Equipment in a safe and proper manner that is consistent with any and all applicable federal, state and/or local statutes, regulations, and ordinances and accepted industry practices, including any instructions provided to Customer by Supplier.  Customer agrees that its use of the Equipment shall represent its acknowledgement that the Equipment was in good condition and repair at the time of delivery.  If the Equipment is not in good condition or repair at the time of delivery, then Customer shall not use the Equipment and shall immediately notify Supplier of any defects or other issues with respect to the Equipment's condition.  Customer shall at all times during the Rental Period and at its own expense, maintain the Equipment in good working condition, excepting ordinary wear and tear caused by proper use.  Any modification or relocation of scaffolding equipment and its components by the Customer, contractor or any subcontractor using the scaffold is to be done solely at the Customer's risk and should at all times be in compliance with and according to any and all federal and/or state occupational safety and health laws, rules and regulations, in addition to applicable city, county or local codes.  The Equipment shall only be used for the purposes for which it was designed.

**Enclosures.**  If Supplier provides Equipment related to the enclosure of scaffolding, then Customer acknowledges and agrees that the Equipment provided by Supplier for purposes of enclosing scaffolding is designed and intended to detach under certain weather conditions and that the Equipment (including the scaffolding) may be damaged or destroyed as a result of such detachment.  Customer shall be responsible for any and all costs, damages, expenses (including maintenance expenses), and/or liabilities relating to such enclosure Equipment, including any and all costs or damages associated with the replacement thereof or Customer's failure to detach such enclosure Equipment when appropriate or otherwise required by certain weather conditions.  In addition, Customer agrees to indemnify, defend, and hold Supplier harmless from any and all claims, damages, judgments, or liabilities whatsoever relating to any personal injury (including death) or property damage arising out of or in any way relating to the enclosure Equipment, including any damages caused by the detachment of such enclosure Equipment, and any enclosure-related services provided by a party other than Supplier.

**Rental Rate.**  Unless otherwise agreed to by the Parties, Equipment is rented initially on a 28 day cycle and on a per day basis thereafter.  This Rental Period begins when the Equipment is picked up or, if delivered, when Equipment is prepared for shipment in our yard prior to delivery.  Customer shall be billed for the Rental Period based upon rates set forth in this Agreement, as may be adjusted in accordance herewith, plus any and all applicable federal, state and local taxes.  A credit will be issued upon Customer furnishing satisfactory evidence of tax exempt status.

**Incident Notification.**  Customer shall notify Supplier immediately of any incident or accident that involves (or potentially involves), directly or indirectly the Equipment and that results (or may result) in death, personal injury, Loss, property damage or an event that triggers (or may trigger) Customer's indemnity obligation set forth above.  Customer shall at all times fully cooperate with Supplier to limit the extent of any Losses or damages resulting from such an incident.  Customer shall also cooperate with Supplier during Supplier's investigation of any such incident and understands that time if of the essence after an incident to promptly investigate and isolate the physical evidence (including the taking of of photographs and other measures to prevent the spoliation of physical evidence).  Customer is deemed to have knowledge of the incident from the time that the Customer or its employees, agents, representatives, contractors, subcontractors, suppliers, vendors, or other parties who report to the Customer, learn of the incident or accident.

**Force Majeure.**  Supplier shall not be responsible for failure of Equipment if and to the extent such failure was caused by an event or occurrence beyong Supplier's reasonable control and without its fault or negligence.  Notwithstanding anything to the contrary contained herein, Customer shall at all times, be responsible to Supplier for any damage, Loss, or other liability related to the Equipment.

**Assignment.**  Customer shall not assign its rights or obligations under this Agreement to any third party without first obtaining the prior written consent of Supplier.

**Default and Termination.**  Customer shall be in default of its obligatons under this Agreement if any of the following occur: (1) Customer fails to pay Supplier as agreed; (2) Customer becomes insolvent or any proceeding in bankruptcy or receivership is commenced; (3) a termination or liquidation of Customer's business occur; or (4) customer is in breach of any terms or conditions of this Agreement.  In the event of any default by Customer, Supplier shall have the right to stop performance on the project, remove any Equipment, terminate this Agreement, or seek any other remedy available to Supplier in law or equity.  Customer shall bear all costs and/or expenses (including reasonable attorneys' fees) incurred by Supplier as a result of Customer's default.

**Notice.**  Any notice or other communication required to be given hereunder must be sent by (1) first class mail to addresses of the parties listed or any other address communicated in writing by one party to the other, or (2) by email.

**Venue and Governing Law.**  This Agreement shall be governed and construed under the laws of the Province or State in which the Project is located, without regard to that province's or state's conflict of laws principles.  The venue for any cause of action arising out of this Agreement shall be the or State in which the project is located.

**Non-Discrimination.  This contractor and subcontractor shall abide by the requirements of 41 CFR Sections 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin.  Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.**

Rev 5/18



## All-American Scaffold, LLC Standard Terms and Conditions - Sale/Rental

**Minimum Insurance Requirements.**
(a) At all times while performing work hereunder, Customer shall maintain insurance in amounts not less than:
  (1) Workers' Compensation: Statutory amount;
  (2) Employer's Liability: minimum limit of $1,000,000 per accident;
  (3) General Liability Insurance, including contractual liability, products, and completed operations: $1 million per occurrence and $2 million aggregate;
  (4) Automobile Liability Insurance: combined single limit of $1 million per accident;
  (5) Excess Liability Insurance combined single limit for Bodily Injury and Property Damage of not less than $4,000,000 per occurrence.
(b) All insurance policies required herein shall:
(1) Name Company, its directors, officers, employees, affiliates and agents as additional insureds to the greatest extent allowed by law except items (1) and (2) above on a broad form endorsement with coverage no less broad than ISO form CG 2010 1185.  A current certificate of insurance must be supplied indicating the above coverage prior to the commencement of the work.  Company shall have no duty to review said certificates and any failure of Company to notify Customer of its non-compliance with this section or any other provision contained in these requirements shall not act as a waiver of any right by Company.
(2) Contain and endorsement stipulating that Customer's policies are primary to and not contributory with any other policies affording coverage to Company and all other additional insureds, including any self-insurance retention or deductible maintained by the company;
(3) Provide that no policy shall be materially changed, amended or canceled except after 30 days prior written notice to Company;
(4) To the maximum extent permitted by law, all insurance policies of Customer in any way related to, or providing any coverage in connection with the work, whether or not required by this Agreement, shall be endorsed to waive all rights of subrogation against Company, except workers' compensation and employer's liability coverage.

# EXHIBIT B

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ESTATE OF BENJAMIN RIVERA-AVILA, Itself and on Behalf of Surviving Spouse MARIA PEREZ REYES and Surviving Children CHRISTIAN RIVERA, JOSELIN RIVERA, JUAN DE DIOS RIVERA, JOSE MANUEL RIVERA-PEREZ and SHAILA RIVERA-PEREZ, | Case No. LACL152422 |
| Plaintiff, | |
| v. | **AMENDED PETITION AND JURY DEMAND** |
| ROBERT CRAMER, BRIAN JACOB, SCOTT DOUGHTY, JACOB BRANAN, CRAMER AND ASSOCIATES, INC., ALL-AMERICAN SCAFFOLD, LLC dba ALL-AMERICAN SCAFFOLD BY BRANDSAFWAY, ALL-AMERICAN SCAFFOLD, and BRANDSAFWAY, LLC, | |
| Defendants. | |

COME NOW Plaintiff Estate of Benjamin Rivera-Avila (Ben) and for its Petition against Defendants Robert Cramer (Cramer), Brian Jacob (Jacob), Scott Doughty (Doughty), Jacob Branan (Branan), Cramer and Associates, Inc. (CA), All-American Scaffold, LLC (AAS), and BrandSafway LLC state as follows:

### Introduction

1. On February 6, 2020, while working for CA under the supervision of Cramer, Jacob, Doughty, and Branan, Ben fell from a scaffolding improperly erected by a person who was not qualified or supervised as required by OSHA regulations and died. Through these failures Cramer, Jacob, Doughty and Branan, as co-employees,

1

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

were grossly negligent which is an exception to the Workers' Compensation Act. ICA § 85.20.

2. The scaffolding, provided by AAS, had several design defects and lacked sufficient instructions and warnings, rendering it liable for Ben's death.

### Parties & Relevant Individuals

3. Plaintiff Estate of Benjamin Rivera-Avila (Ben) is the probate estate of decedent, Benjamin Rivera-Avila.

4. Decedent Benjamin Rivera-Avila (Ben) was at all times hereto a resident of Altoona, Iowa and an employee of Cramer and Associates, Inc.

5. Juan De Dios Rivera (Juan) is an adult son of Ben who resides in Altoona, Iowa, and who has petitioned the Polk County Probate Court to be appointed Administrator of the Estate of Ben.

6. Maria Perez Reyes (Maria) at all times hereto was the spouse of Ben and a resident of Altoona, Iowa.

7. Christian Rivera (Christian) is an adult daughter of Ben and a resident of Harvard, Illinois.

8. Joselin Rivera (Joselin) is an adult daughter of Ben and a resident of Harvard, Illinois.

9. Jose Manuel Rivera-Perez (Jose) is an adult son of Ben and a resident of Altoona, Iowa.

10. Shaila Rivera-Perez (Shaila) is a minor daughter of Ben and a resident of Altoona, Iowa.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

11. Defendant Robert Cramer (Cramer) at all times hereto was the President of Cramer and Associates, Inc. and the supervisor of Ben.

12. Defendant Brian Jacob (Jacob) at all times hereto was the Project Manager of Cramer and Associates, Inc. and the supervisor of Ben.

13. Defendant Scott Doughty (Doughty) at all times hereto was the Safety Director of Cramer and Associates, Inc. and the supervisor of Ben.

14. Defendant Jacob Branan (Branan) at all times hereto was the Foreman of Cramer and Associates, Inc. and the supervisor of Ben.

15. Defendant Cramer and Associates, Inc. (CA) at all times hereto was an Iowa for-profit corporation with its home office at 3100 SW Brookside Dr., Grimes, IA 50111 and the employer of Ben, Cramer, Jacob, Doughty and Branan.

16. Defendant All-American Scaffold, LLC dba All-American Scaffold By BrandSafway (AAS) is an Iowa for-profit corporation with a Polk County location at 51 Washington Ave., Des Moines, Iowa 50314, from which it provides, among other things, scaffolding to assist in construction projects.

17. Defendant BrandSafway, LLC (BS) is a foreign limited liability company authorized to do business in the state of Iowa, with its global headquarters located at 1325 Cobb International Dr., Suite A-1, Kennesaw, GA 30152.

## Jurisdiction and Venue

18. Jurisdiction is proper as the amount in controversy exceeds the statutory limits for small claims court.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

19. Venue is proper in Polk County, Iowa as Defendants are located in the county and the events that support this cause of action occurred in the county.

## General Factual Allegations

20. On February 6, 2020 on 1-80 at mile-marker 133 in Des Moines, Iowa at approximately 8:20 am, while on the job for CA, Ben fell 30 feet from scaffolding to his death.

21. The Project Manager for this jobsite was Jacob, the Safety Director was Doughty and its Foreman was Branan.

22. Prior to this tragedy, CA had identified 22 people to serve as the Competent Person to be on the job site when scaffolding was present, as required by OSHA.

23. Ben was not one of these people.

24. Branan was a Competent Person and signed the document memorializing it.

25. The document regarding Competent Persons was also signed by Cramer.

26. The document stated: "OSHA requires a Competent Person to be present when workers are involved in the following activities…. Scaffolding (1926.451)."

27. Branan was the Competent Person for the project Ben was working on when he fell and died.

28. Shortly prior to the accident, Ben was ordered by Cramer, Jacob, Doughty and/or Branan to erect the scaffolding.

29. None of the 22 Competent Persons identified by CA supervised the erection of the scaffolding, including Branan.

E-FILED 2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

30. The scaffolding had only been used by the employees on that project a few times prior to Ben's death.

31. Neither Cramer, Jacob, Doughty or Branan ascended, or was otherwise exposed to, the scaffolding as erected by Ben prior to his death.

32. On April 20, 2020, Iowa OSHA (OSHA) issued a citation to CA, noting several, serious violations.

33. Item 1 was Serious Violation IAC 875- Chapter 26, 1926.451(a)(6) for failing to construct the scaffold in accordance with the design by a qualified person.

34. Under Item 1, OSHA identified Ben had been pulling a heavy weight over the top of a guardrail that had been "installed backwards," and the guardrail eventually came loose, causing his fall.

35. Item 2 was Serious Violation IAC 875-Chapter 26, 1926.451(g)(4)(i), under which OSHA identified that the midrail in the ladder access area was hanging vertically, which may have contributed to Ben's fall.

36. Item 3 was Serious Violation IAC 875-Chapter 26, 1926.451(g)(4)(vii) for allowing the guardrail system to be subject to a force applied downward of 200 pounds.

37. Under Item 3, OSHA identified the "Safway Guardrail Posts had been installed backwards," the top guardrail came loose, and this caused Ben's fall.

38. Item 4 was Serious Violation IAC 875-Chapter 26, 1926.451(f)(7) for erection of a scaffold by a person not trained and experienced and under the supervision and direction of a competent person.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

39. Under Item 4, OSHA identified the improper installation of the Safway Guardrail Posts, this "incorrect assembly was not discerned," and that the guardrail came loose, causing Ben's fall.

40. Item 5 was Serious Violation IAC, 1926.454(b)(2), for failing to have each employee trained by a competent person to recognize the hazards associated with scaffolding, and, therefore, Ben "failed to discern the incorrect assembly."

41. For these violations, CA was penalized $53,040.00.

42. The scaffolding was provided to CA by AAS.

43. The scaffolding, Safway CGGRP "G" lock, has an asymmetrical nature, such that it is actually easier to use on the jobsite if it is installed *incorrectly*, because correct installation interferes with the ladder.

44. The scaffolding provided also failed to meet the requirements of 29 CFR 1926.451(g)(4)(vii) which requires a handrail to be able to withstand 200 pounds of force in any horizontal direction.

45. Safway CGGRP was expressly designed to only withstand such force if the G was oriented toward the scaffold.

46. The Safway CGGRP's design was also defective as it allowed the presence of ice to interfere with the G locking tab.

47. The Safway CGGRP provided by AAS also had corrosion on the G portion of the post and locking tab, which inhibited its operation, which was a design defect.

48. The scaffolding also lacked prohibitory signage that would have prevented the improper installation.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

49. For example, having a simple metal label with the words "Working Platform This Side" along with an arrow would have directed installation in accordance with the Safway CGGRP "G" lock instruction manual.

50. Other prohibitory signage that would have prevented improper installation would contain warnings.

51. Such warning signs are commonly used, and could be as simple as "This Side Must Face Away From Scaffold" or "This Side Should Not Be Visible From the Scaffold," or



IF YOU CAN READ THIS
FROM SCAFFOLD
**POST   IS
BACKWARDS**

### Count I
### Gross Negligence
### Defendants Cramer, Jacob, Doughty and Branan

52. Plaintiff incorporates and realleges each allegation above into this Count I.

53. At all times relevant hereto, as leaders and supervisors of a construction firm, including as a President, Project Manager, Safety Director and Foreman/Competent Person, each individual Defendant was aware of OSHA regulations regarding scaffolding.

54. In particular, each was aware that scaffolding had to be erected by a qualified person – a Competent Person.

55. Each was aware that scaffolding had to be constructed strictly in accordance with its design.

56. Each was aware that ladder midrails had to be horizontal.

57. Each was aware that the guardrail system would have a maximum downward force capacity.

58. Each was aware that scaffolding had to be erected by a person who was trained and experienced.

59. Each was aware that even with that training and experience, the person erecting the scaffolding had to be under the supervision of a Competent Person.

60. Each was aware that a person who was not trained or experienced may be unable to discern an incorrect assembly of a scaffold.

61. Each was aware that even a trained and experienced person may require the expertise of a Competent Person to properly discern if an assembly was incorrected assembled.

62. Each was aware that a person who was not supervised by a Competent Person would fail to recognize the hazards associated with an incorrectly assembled scaffold.

63. Each was aware that the scaffolding had only been used by CA employees a few times before February 6, 2020.

64. Each was aware that workers would be on the scaffolding 20-30 feet in the air, and any fall from such a height would result in death.

65. Each was aware that incorrect assembly of scaffolding had a probable risk of injury from its failing.

E-FILED 2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

66. Yet, each consciously failed to ensure the scaffolding was properly erected by a trained and experienced person under the supervision of a Competent Person.

67. As a direct and proximate result of the individual defendants' failures, Ben suffered traumatic personal injuries and death.

68. At all times material hereto, the individual defendants acted wantonly and recklessly and were grossly negligent as to the rights and safety of Ben.

WHEREFORE, Plaintiff prays for judgment against the individual defendants in amounts that will fully and fairly compensate it for its injuries, for punitive damages in an amount sufficient to punish and deter them and others from such conduct in the future, for interest allowed by law, and for the costs of this action.

### Count II
### Vicarious Liability
### Defendant Cramer and Associates, Inc.

69. Plaintiff incorporates and realleges each allegation above into this Count III.

70. At all times relevant hereto, during each act of gross negligence by the individual defendants set out in Count I, each was acting within the scope and course of his employment with CA.

71. At all times relevant hereto, during each act of gross negligence by the individual defendants set out in Count I, each act was of the same general nature as that authorized or incidental to the conduct authorized, and it was intended to accomplish the purpose of the employment.

72. Plaintiff has been injured as set out above.

9

73. At all times relevant hereto, CA knew or had reason to know that the individual defendants were not properly supervising scaffold erection, were not ensuring trained and experienced persons were erecting scaffolds and were not ensuring Competent Persons were supervising the installations, resulting in the damages to Plaintiffs.

WHEREFORE Plaintiff prays for judgment against the individual defendants in amounts that will fully and fairly compensate it for its injuries, for punitive damages in an amount sufficient to punish and deter them and others from such conduct in the future, for interest allowed by law, and for the costs of this action.

**Count III**
**Products Liability – Design Defect**
**Defendant All-American Scaffold, LLC**

74. Plaintiff incorporates and realleges each allegation above into this Count III.

75. As set out above, the Safway CGGRP had defects in design, to wit:

    a.  It was actually easier to use at a jobsite if it was installed ***incorrectly*** because correct installation interferes with the ladder;

    b.  It failed to meet the requirements of 29 CFR 1926.451(g)(4)(vii) that a handrail be able to withstand 200 pounds of force in any horizontal direction;

    c.  It allowed the presence of ice to interfere with the G locking tab; and

    d.  It allowed corrosion to interfere with the G locking tab

76. That the scaffold would be installed incorrectly, resulting in it failing and personal injuries to its occupants, was a foreseeable risk of harm.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

77. That the G lock would fail to withstand the force of a man with improper installation was a foreseeable risk of harm.

78. That the G lock would fail to withstand the force of a man due to ice interference or corrosion was a foreseeable risk of harm.

79. Each of these foreseeable risks of harm could have been reduced or avoided by a different design that:

    a. Was easier to use if installed properly;

    b. Complied with 29 CFR 1926.451(g)(4(vii); and

    c. Was not susceptible to ice and corrosion interference.

80. Plaintiff has been injured as set out above.

81. At all times, AAS acted wantonly and recklessly and wholly disregarded the rights and safety of Ben.

WHEREFORE, Plaintiff prays for judgment against Defendant AAS in amounts that will fully and fairly compensate it for its injuries, for punitive damages in an amount sufficient to punish and deter it and others from such conduct in the future, for interest allowed by law, and for the costs of this action.

**Count IV**
**Products Liability – Failure to Warn**
**Defendant All-American Scaffold, LLC**

82. Plaintiff incorporates and realleges each allegation above into this Count IV.

83. As set out above, inadequate instructions and warnings were employed with the Safway CGGRP provided by AAS.

E-FILED 2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

84. That persons would be injured by the improper installation of the scaffold was a foreseeable risk of harm.

85. These foreseeable risks of harm could have been reduced or avoided by the provision of reasonable instructions or warnings, such as:

    a. Written instructions such as "Working Platform This Side" with an arrow to direct proper installation;

    b. Warning signs, such as "This Side Must Face Away from Scaffold"; and

    c. Warning signs indicating: "If You Can Read This From Scaffold, Post is Backwards".

86. Plaintiff has been injured as set out above.

87. At all times, AAS acted wantonly and recklessly and wholly disregarded the rights and safety of Ben.

WHEREFORE, Plaintiff prays for judgment against Defendant AAS in amounts that will fully and fairly compensate it for its injuries, for punitive damages in an amount sufficient to punish and deter it and others from such conduct in the future, for interest allowed by law, and for the costs of this action.

**Count V**
**Products Liability – Rental of Defective Equipment**
**Defendants All-American Scaffold and BrandSafway, LLC**

88. Plaintiff incorporates and realleges each allegation above into this Count V.

89. Defendant AAS and BS rented defective equipment which resulted in an injury due to the following failures:

    a. Failure to train;

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

    b.  Failure to warn; and

    c.  Failure to maintain.

90. Plaintiff has been injured as set out above.

91. At all times, AAS and BS acted wantonly and recklessly and wholly disregarded the rights and safety of Ben.

WHEREFORE, Plaintiff prays for judgment against Defendants AAS and BS in amounts that will fully and fairly compensate it for its injuries, for punitive damages in an amount sufficient to punish and deter it and others from such conduct in the future, for interest allowed by law, and for the costs of this action.

## Count VI
## Loss of Spousal Consortium
## All Defendants

92. Plaintiff incorporates and realleges each allegation above into this Count VI.

93. At all times relevant hereto, Maria was the spouse of Ben.

94. As set out above, Ben was injured and died as a result of the tortious conduct of the Defendants.

95. As a direct and proximate result of the injuries to and death of Ben, Maria has lost the companionship, comfort, guidance, affection and aid of her spouse, as well as his general usefulness, industry and attention within the home and family.

WHEREFORE, Plaintiff prays for judgment against the individual defendants in amounts that will fully and fairly compensate it for Maria's loss of consortium, for interest allowed by law, and for the costs of this action.

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

**Count VII**
**Loss of Parental Consortium**
**All Defendants**

96. Plaintiff incorporates and realleges each allegation above into this Count VII.

97. At all times relevant hereto, Christian, Joselin, Juan, Jose and Shaila were the children of Ben.

98. As set out above, Ben was injured and died as a result of the tortious conduct of the Defendants.

99. As a direct and proximate result of the injuries to and death of Ben, Christian, Joselin, Juan, Jose and Shaila have lost the society and companionship of their father.

WHEREFORE, Plaintiff prays for judgment against the individual defendants in amounts that will fully and fairly compensate it for Ben's children's loss of consortium, for interest allowed by law and for the costs of this action.

**Jury Demand**

Plaintiff demands a trial by jury.

Respectfully submitted,

_/s/ Marc Harding_
Marc S. Harding AT0003226
HARDING LAW OFFICE
1217 Army Post Road
Des Moines, Iowa 50315
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
marc@iowalegal.com

E-FILED  2022 FEB 07 4:30 PM POLK - CLERK OF DISTRICT COURT

_/s/Jeff Lipman_

Jeffrey M. Lipman  AT0004738
LIPMAN LAW FIRM, P.C.
1454 30th St. Suite 205
West Des Moines, IA 50266
Telephone: (515) 276-3411
Facsimile: (515) 276-3736
Email: jeff@lipmanlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**